# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                      No. CR 06-2384 JB

PATRICIA ALBERT,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' oral objections to the Presentence Investigation Report ("PSR"). The Court held a sentencing hearing on November 8, 2007. The primary issues are: (i) whether the Court should sustain the objection to the United States Probation Office's refusal to enhance Defendant Patricia Albert's offense level under U.S.S.G. § 3B1.3 because it contends that Albert abused a position of public or private trust; and (ii) whether the Court should award victim Wilfred Marquez restitution in the amount of $126.63 for funds he used to restore and correct his credit. Because the United States has not proven that Albert occupied a position of trust with her victims, the Court overrules the United States' objections. Moreover, the Court will not order Albert to pay Marquez for his losses for miscellaneous postage and copies of paperwork to various creditors, in the amount of $126.63, because those losses are not actual damages from Albert's crimes, and thus are ineligible for restitution.

## FACTUAL BACKGROUND

Albert worked as a healthcare assistant for Linda K. Pyle and Wilfred Marquez. See PSR ¶¶ 7, 8, 15, 16 at 4, 7, re-disclosed September 17, 2007 ("Re-disclosed PSR"). When Albert worked

for Pyle, she was "asked to obtain the mail but instructed not to open it." Id. ¶ 8, at 4. "Albert never had authorization to write or sign checks for Mrs. Pyle, and she was not an authorized account user for any credit cards accounts in Mrs. Pyle's name." Id.

Albert was hired to be Pyle's live-in home healthcare aide, including "cleaning the home, preparing meals for herself and Ms. Dougan [Pyle's sister], shopping, and watering the roses in the front of the house." Id. ¶ 8, at 4. "Albert was given $200 petty cash each month for purchasing food and supplies, having been asked to provide receipts for purchases." Id. Albert used Pyle's personal data to fraudulently apply for and receive a Bank of America credit card. See id. ¶ 6, at 4.

Albert used that credit card to obtain cash or merchandise valued over $1,000. See id. Albert ultimately obtained $16,863.74 worth of merchandise and goods using Pyle's identity. See id. ¶ 10, at 5. Albert used Pyle's social security number and date of birth to obtain other credit cards. See id. ¶ 12, at 6. Albert also used Pyle's 2003 Notice of Property Value in Bernalillo County, and her Medicare card. See id.

Albert also fraudulently obtained several credit accounts using Marquez' name and social security number to obtain $5,876.20 worth of merchandise and goods. See id. ¶ 17, at 7. Albert provided home healthcare to Marquez through Sunset Home Health. See id. ¶ 16, at 7. On April 17, 2007, Albert admitted using Pyle and Marquez' information to obtain "a credit card in [her] name" without permission. Id. ¶ 30, at 11.

**PROCEDURAL BACKGROUND**

Albert was indicted for two counts of violating 18 U.S.C. §§ 1029(a)(2) and 2. See Indictment, filed November 15, 2007 (Doc. 1). On June 11, 2007, the USPO disclosed a PSR regarding Albert. See PSR, disclosed June 11, 2007. The USPO assessed a 2-level adjustment to Albert's offense level pursuant to U.S.S.G. § 3B1.3 for abuse of private or public trust. See id. ¶

35, at 12.  The USPO noted that Albert "used her place of employment as a starting point to obtain personal data of each victim [and] [h]ad the defendant not been employed in such a position, she would not have been able to obtain and access personal information she used to assume the victim's [sic] identities."  Id.  The USPO also calculated a total restitution of $22,640.21 due to Pyle and Marquez.  See id. ¶ 83-84 at 29.  The amount assessed for Marquez totaled $5,876.20.  See id. ¶ 84, at 29.

On August 29, 2007, Albert submitted objections to the PSR, and moved for departures and a variance.  See Defendant's Sentencing Memorandum, Objections to Presentence Report, and Motion for Downward Departure, filed August 29, 2007 (Doc. 26)("Sentencing Memo.").  Albert contended that a role adjustment pursuant to U.S.S.G. § 3B1.3 was inappropriate.  See Sentencing Memo. at 1.  Albert argued that her access to mail did "not establish that [her] victims accorded her complex, situation-specific decision-making that is given considerable deference because it cannot be dictated entirely by, or monitored against, established protocol, or the opportunity to exercise her judgment in the victims' best interest."  Id. at 2 (citing United States v. Tiojanco, 286 F.3d 1019 (8th Cir. 2002))(internal quotations omitted)).  Albert contended that, because her victims "precisely circumscribed [her] duties, allowing her no decision-making authority or opportunity to exercise her judgment regarding financial matters[,] Ms. Albert could not decide how to do her job [and] . . . [a]s a result, an abuse of position of trust adjustment [i]s not warranted."  Sentencing Memo. at 3.

The United States responded on September 20, 2007.  See The United States [sic] Response to Defendant's Sentencing Memorandum and Motion for Downward Departure, filed September 20, 2007 (Doc. 30)("Response").  The United States contended that an abuse-of-position-of-trust adjustment was warranted.  See id. at 5.  The United States acknowledged that Pyle expressly forbade Albert from opening her mail.  See id. at 6.  The United States nevertheless contended that

Albert's "position as a home health care giver for the disabled place[d] her in a position of private trust, as well as advertises her special skill to provide health care for needy and ill people." Id. at 7. The United States contended that, because Albert used this special skill to "both facilitate and conceal the offense of conviction[,] [t]he two level role adjustment is proper." Id. The United States relied on Application Note 2(b) to U.S.S.G. § 3B1.1 to contend that Albert took "identifiers" from her victims "in the course of providing home health care for . . . disabled individuals" and thus that the adjustment for abuse of position of trust is proper. Response at 8.

Although the United States never filed formal objections with the Court regarding Albert's PSR, it made informal objections to the USPO. On September 11, 2007, the United States submitted an informal objection to the USPO's recommendation that a 2-level increase be assessed to Albert pursuant to U.S.S.G. § 3A1.1, regarding "vulnerable victims." Addendum at 1, disclosed September 17, 2007 ("Addendum"). The USPO determined that a 2-level increase to Albert's base offense level was applicable because one of her victims was blind and bedridden while the other was partially paralyzed. See id. at 1. The USPO noted that the PSR would be re-disclosed, with the 2-level adjustment to Albert's offense level assessed. See id. The USPO also noted that Albert had informal objections that were incorporated into her Sentencing Memorandum regarding the adjustment to her offense level under U.S.S.G. § 3B1.3. See Addendum at 1.

On September 17, 2007, the USPO re-disclosed Albert's PSR. See Re-disclosed PSR, re-disclosed on September 11, 2007. In the re-disclosed PSR, the USPO assessed a 2-level adjustment pursuant to U.S.S.G. § 3A1.1(b)(1) for "vulnerable victim." Re-disclosed PSR ¶ 35, at 12. The USPO assessed the same amount of restitution for Marquez as it did in the original PSR. See id. ¶ 85, at 29. The USPO used the 2002 version of the Guideline Manual to determine Albert's offense level. See id. ¶ 31, at 11.

On November 6, 2007, the USPO wrote a second addendum to Albert's Re-disclosed PSR. See Second Addendum to the Presentence Report, dated November 6, 2007 ("Second Addendum"). In the Second Addendum, the USPO noted that Marquez was asking for a $126.63 in restitution for money he used to restore and correct his credit, an amount $53.90 more than the amount originally identified in the PSR. See id. at 1. The USPO explained that "[a]lthough Mr. Marquez' situation is tragic and heartfelt, it does not appear the losses incurred restoring his credit can be ordered for restitution purposes." Id. The USPO stated "[t]his is based on an assessment of the applicable restitution statutes and the harm Mr. Marquez incurred being equitable to a collateral consequence or damage." Id.

The Court held a hearing on November 8, 2007. The United States acknowledged that Albert had no authority over her clients' mail. See Transcript of Hearing (taken November 7, 2007)("Tr.") at 13:7-12 (Court & McCulloch).[1] The United States also conceded that Albert did not occupy a position of public or private trust under United States v. Spears, 491 F.3d 1150 (10th Cir. 2007). See Tr. at 5:21-25 (Court & McCulloch). The United States stated that it was attempting to come under application note 2(b) to U.S.S.G. §3B1.3. See Tr. at 6:4-6 (Court & McCulloch).

The United States contended that Albert exceeded the authority she had as a home healthcare aide by opening the mail. See id. at 13:10-12 (McCulloch). The United States asserted that United States v. Spears, 491 F.3d 1150 (10th Cir. 2007), was inapplicable to Albert's case. See id. at 14:1-4 (McCulloch). The United States argued that the Guideline did not require a nexus between the defendant's job and the defendant stealing identification information. See id. at 12:18-22 (Court & McCulloch).

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

-5-

The United States acknowledged that Albert's case did not fall within the United States v. Spears line of cases, but rather was governed by United States v. Evans, 44 Fed.Appx. 449, 453 (10th Cir. 2002) and United States v. Pappert, 112 F.3d 1073, 1080 (10th Cir. 1997). The USPO noted, however, that it used the 2002 version of the Guidelines Manual to calculate Albert's offense level, which does not have application note 2 to U.S.S.G. §3B1.3. See Tr. at 15:1-22 (Pedraza, Court & McCulloch). The United States conceded that, because the USPO used a 2002 Guideline Manual to write Albert's PSR, the USPO did not use application note 2 to U.S.S.G. §3B1.3. See Tr. at 15:19-16:23 (Court & McCulloch). The United States nevertheless contended that Albert used a personal-trust relationship with her home care patients to perpetrate her offenses. See id. at 18:1-8 (McCulloch).

Albert countered that she had no managerial discretion and that her offenses were different from a hospital orderly misusing patient information. See id. at 8:1-9 (Katze). Albert characterized her crime as one of opportunity. See id. at 8:17 (Katze). Albert argued that U.S.S.G. §3B1.3 authorizes an adjustment when a defendant exceeds the authority of her position. See id. at 10:8-11 (Katze). Albert contended that she had no financial responsibility whatsoever as a home-health aide. See id. at 10:18-22 (Katze). Albert argued that, because she had no authority to look at the mail, she could not abuse authority that she did not have. See id. at 10:22-25 (Katze).

The United States argued that Marquez' claimed restitution is not a collateral consequence of Albert's offenses, because it is a direct consequence. See id. at 19:3-18 (McCulloch). Albert countered that Marquez' damages are too far removed from Albert's underlying criminal conduct to form the basis of a restitution order. See id. at 20:7-13 (Katze). Albert argued that Marquez' losses are indirect, because they are not money that was taken from him; they are collateral damages, and that the Court is without authority to order restitution for them. See id. at 20:14-17 (Katze).

## LAW REGARDING U.S.S.G. § 3B1.3

U.S.S.G. §3B1.1, entitled "Abuse of Position of Trust or Use of Special Skill" provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role).

Id. Application Note 1 defines "public or private trust" and explains that :

> Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

U.S.S.G. §3B1.1 app. n.1. The United States "must satisfy two elements to meet § 3B1.3, establishing: [i] whether the person occupies a position of trust, and [ii] whether the position of trust was used to facilitate significantly the commission or concealment of the crime." United States v. Spear, 491 F.3d at 1153.

The United States Court of Appeals for the Tenth Circuit has explained that "position of trust is a bit of a misnomer. It actually has little to do with trustworthiness and everything to do with authority and discretion." Id. at 1154 (internal quotations omitted)(emphasis in the original). Thus, "the lack of any authority to make substantial discretionary judgments is key in determining whether

the enhancement applies." Id. (internal quotations omitted).

Because U.S.S.G. §3B1.1 is concerned with persons abusing their lack of supervision to commit or conceal wrongdoing, "it is reserved for those with professional or managerial discretion." United States v. Spear, 491 F.3d at 1154. That authority involves "substantial discretionary judgment." Id. (emphasis in the original). A sentencing court

> must undertake a functional analysis of job responsibilities and examine whether those duties were merely ministerial or were, in fact, managerial. Indications of substantial discretionary judgment under the § 31B1.3 enhancement include the authority to engage in case-by-case decisionmaking, to set policies, and to grant exceptions to governing policies or protocols. These factors are a [sic] nonexhaustive, and no one factor is dispositive of the analysis.

United States v. Spear, 491 F.3d at 1155. Morever, even if a defendant "occupies a position of trust," the court must "determine if the position was used in a manner that significantly facilitated the commission or concealment of the offense." Id. at 1155 (internal quotations omitted).

In United States v. Spear, the Tenth Circuit determined that enhancement under § 1B1.3 was inappropriate. The defendant, a federal immigration employee responsible for intake of applications for changes in status, embezzled application fees by depositing the fees into her personal account. The Tenth Circuit found that "her theft was accomplished by being in the right place at the right time, i.e., opportunity and access, not by exercising the cloak of authority to stave off inquiry or decision-making power to cover her tracks." 491 F.3d at 1156-59.

In United States v. Edwards, 325 F.3d 1184 (10th Cir. 2003), the Tenth Circuit explained that the § 3B1.3 enhancement is not to be applied in every employee fraud or embezzlement case. See id. at 1187. Thus, according to the Tenth Circuit in United States v. Edwards, that an employee "was trusted by her employer with significant responsibility -- even to the point of allowing her to bypass usual accounting controls and pick up customer checks from incoming mail -- is not

determinative." Id.  The defendant in United States v. Edwards mostly handled accounts receivable and diverted customer payments into her boyfriend's account.  See id. at 1185-86.   The enhancement was inapplicable to the defendant in United States v. Edwards because her work was ministerial and clerical.  See id.  The Tenth Circuit rejected the United States' argument that the defendant had "alleged specialized accounting skills,  . . . minimal oversight, [and] . . . virtually exclusive control over the accounts receivable and customer billing records," and that she "use[d] . . . her position to conceal [her offense]."  Id.  at 1187.

The Tenth Circuit has generally applied the § 3B1.3 enhancement in two categories of cases: "[i] where employees abuse their position within their own organization to take advantage of the employer, and [ii] where someone uses a fiduciary or personal trust relationship to perpetrate the charged offense against the beneficiary of the trust."  United States v. Evans, 444 Fed.Appx. at 453. In United States v. Evans, the defendants ran an organization that recruited day-care providers to provide meals to underprivileged children.  See 444 Fed.Appx. at 450.  The Utah State Office of Education received federal funds and dispensed them to the defendant's organization to cover overhead and administrative costs.  See id. at 451.  The organization was responsible for recruiting the providers and disbursing payment to them.  See id.  The defendants submitted fraudulent paperwork seeking reimbursements for meals not served or for providers no longer with the program, listed incorrect addresses for providers, and demanded that some providers give them kickbacks from reimbursement checks.  See id.  The Tenth Circuit held that enhancement under U.S.S.G. § 3B1.3 was appropriate, because the defendants "exercised considerable control and maintained considerable independence, despite some regulatory oversight."  447 Fed.Appx. at 453. The Tenth Circuit noted that the providers were not given funds in advance to give meals to the children, but instead were reimbursed for meals provided during the previous month.  See id.

"Defendants received the funds that they were to use to reimburse providers.  This placed defendants in a personal trust relationship with the providers, and the defendants' demands for kickbacks abused that trust and deprived the providers of reimbursement funds."  Id.

In United States v. Pappert, the Tenth Circuit found that the defendant had a position of trust with his customers, because he "gained a position of trust with respect to the customers that enabled him to conceal his fraud for long periods of time." 112 F.3d at 1080.  There is no "bright line between formal or informal fiduciary relationships, and run-of-the-mill commercial relationships." United States v. Pappert, 112 F.3d at 1080. The court must "carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity, and relationships in which the victim's trust is based on [the] defendant's position in the transaction." Id. (internal quotations omitted).  In United States v. Pappert, the Tenth Circuit determined that the enhancement was applicable because:

> In isolation, each one of his lease agreements might appear to be a standard commercial transaction, executed at arm's length.  However, when [the defendant's] acts are considered in the aggregate, it appears that he created a position of trust . . . . In this manner, by virtue of his role as middleman between customer and financing source, he gained a position of trust with respect to the customers that enabled him to conceal his fraud for long periods of time.

Id. at 1080.  See United States v. Queen, 4 F.3d 925, 929 (10th Cir. 1993)(explaining that the defendant occupied a position of trust when he held himself out as an investment advisor/broker because that position "is typically [filled by] an individual who is entrusted with the discretionary authority to manage the assets of his or her clients through the application of specialized knowledge.").

The United States Court of Appeals for the Second Circuit has applied the enhancement to a home-health aide who obtained personal information from three of her clients and used the

information to open unauthorized credit cards in violation of 18 U.S.C. §§ 1029(a)(2) and 1028(a)(7).  See United States v. Morris, 350 F.3d 32, 34 (2d Cir. 2003).  In United States v. Morris, all three clients were in their eighties and nineties, and two of them suffered from Alzheimer's disease or dementia.  See id.  The Second Circuit held that the sentencing court's application of U.S.S.G. § 3B1.3 was appropriate.  See id. at 38.  The Second Circuit explained:

> Defendant's position as a home health aide gave her continuous access to the homes of her elderly and mentally disabled victims, and relatively unsupervised discretion over their daily care.  Their reliance on defendant for their day-to-day needs provided her with the ability to misappropriate their personal information and to cover up the misappropriation after it occurred.

Id.  The Second Circuit was unpersuaded that the defendant's position was too menial to qualify as a position of trust.  See id.

In United States v. Thomas, 315 F.3d 190 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit applied the enhancement to a home health-care aide who withdrew funds from her client's account and put them into her own account.  See 315 F.3d at 194.  The Third Circuit determined that the defendant's position was not "merely a health aide."  Id. at 204.  It applied three factors to determine that the defendant held a position of trust:

> [i] whether the position allows the defendant to commit a difficult-to-detect wrong; [ii] the degree of authority which the position vests in the defendant vis-a-vis the object of the wrongful act; and [iii] whether there has been reliance on the integrity of the person occupying the position.

Id.  The Third Circuit noted that the defendant "opened [the victim's] mail for her without supervision and that [the victim] gave [the defendant] authority to pay bills for her.  These tasks clearly invested [the defendant] with considerable discretion since [the victim] did not monitor [the defendant] closely and appeared to rely on [the defendant's] judgment and integrity."  Id.  The Third Circuit emphasized that "[t]here was substantial reliance on the good faith of [the defendant], as

-11-

there would be in any relationship where financial matters are entrusted to another." Id. at 204-205. See United States v. Carroll, No. CRIM. 92-00627, 1993 WL 134762 at ** 1, 3 (E.D. Pa. 1993)(applying enhancement to a defendant who acted as an aide "in effect to be [the victim's] arms and legs -- and to look after [the victim's] personal needs," and who stole 21 checks from the victim's mail).

The enhancement is not authorized "when the elements of the underlying offense include abuse of a position of trust." United States v. Chimal, 976 F.2d 608, 613-14 (10th Cir. 1992)(explaining that "[a]n ordinary bank teller, who steals from the till and adjusts the records, is not subject to the abuse of trust enhancement because the job is not considered a position of trust. Unlike a bank teller, Defendant as comptroller held a position of trust. She essentially had complete control over the accounting department and rarely had to report her activities to a superior."). "[E]mbezzlement by definition involves an abuse of trust." Id. at 613, 613 n.5 ("Embezzlement involves the fraudulent appropriation to his own use or benefit, of property or money entrusted to [an individual] by another, by a clerk, agent, trustee, public officer, or other person acting in a fiduciary character.")(internal quotations omitted and alteration in the original).

## LAW REGARDING RESTITUTION

The Mandatory Victim Restitution Act of 1996 applies to defendants who have, among other things, committed offenses against property. See 18 U.S.C. § 3572. "In a restitution order, the district court shall order restitution to each victim in the full amount of each victim's losses as determined by the court without consideration of the economic circumstances of the defendant." United States v. Galloway, 509 F.3d 1246, 1253 (10th Cir. 2007). The United States bears the burden of proving the amount of loss. See id. "[T]he district court resolves disputes over the proper amount of restitution by the preponderance of the evidence." Id. "[A] restitution order must be

based on the <u>actual amount of loss</u> . . . sustained by a victim as a result of the offense." <u>United States v. Messner</u>, 107 F.3d 1448, 1455 (10th Cir. 1997)(internal quotations omitted)(emphasis added).

In <u>United States v. Patty</u>, 992 F.2d 1045 (10th Cir. 1993), the Tenth Circuit explained that "[e]xpenses generated in recovering a victim's losses . . . generally are too far removed from the underlying criminal conduct to form the basis of a restitution order." <u>Id.</u> at 1049 (internal quotations omitted). In <u>United States v. Patty</u>, the Tenth Circuit held that "attorney fees incurred by the victim to recover his property are not directly related to the defendant's criminal conduct and thus are not recoverable in restitution . . . ." <u>Id.</u> The Tenth Circuit explained, however, that attorney fees may be recoverable if they are "directly related to a defendant's criminal conduct because they were 'sustained by [the] victim as a result of the offense.'" <u>Id.</u> (quoting 18 U.S.C. § 3664)(alteration in the original).

## <u>LAW REGARDING 18 U.S.C. § 1029</u>

18 U.S.C. § 1029(a)(2) provides that: " Fraud and related activity in connection with access devices (a) Whoever -- . . . (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period . . . ." <u>Id.</u> 18 U.S.C. § 1029(e)(1) explains that

> the term "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

<u>Id.</u> 18 U.S.C. § 1029(2) provides:

> Whoever is a party to a conspiracy of two or more persons to commit an offense

under subsection (a) of this section, if any of the parties engages in any conduct in furtherance of such offense, shall be fined an amount not greater than the amount provided as the maximum fine for such offense under subsection (c) of this section or imprisoned not longer than one-half the period provided as the maximum imprisonment for such offense under subsection (c) of this section, or both.

Id.

## ANALYSIS

The Court will not sustain the United States' objection to the PSR's failure to assess an enhancement against Albert, because an adjustment under U.S.S.G. § 3B1.1 is unauthorized under the facts and circumstances of this case.  Albert's offenses do not include abuse of a position of trust as an element.  Moreover, the United States has not proven that Albert occupied a position of trust with her victims, because she lacked substantial discretionary authority over her job duties as a home-health care aide.  The United States also failed to prove that, even if Albert occupied a position of trust, that the position of trust was used to facilitate significantly the commission or concealment of her crime.  Finally, the Court will not order Albert to pay Marquez for his losses for miscellaneous postage and copies of paperwork to various creditors in the amount of $126.63, because those losses are not actual damages from Albert's crimes, and thus are not eligible for restitution.

## I.     A ROLE ADJUSTMENT PURSUANT TO U.S.S.G. § 3B1.1 IS NOT AUTHORIZED UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE.

The United States "must satisfy two elements to meet § 3B1.3, establishing: [i] whether the person occupies a position of trust, and [ii] whether the position of trust was used to facilitate significantly the commission or concealment of the crime."  United States v. Spear, 491 F.3d at 1153.  The elements of Albert's underlying offenses do not include abuse of a position of trust.  Moreover, Albert did not occupy a position of trust with her patients, because she lacked substantial

discretionary job duties.

### A.   THE ELEMENTS OF ALBERT'S UNDERLYING OFFENSES DO NOT INCLUDE ABUSE OF A POSITION OF TRUST.

Albert was not charged with an embezzlement crime. <u>See</u> <u>United States v. Chimal</u>, 976 F.2d at  613, 613 n.5 (stating that "embezzlement by definition involves an abuse of trust," and that "[e]mbezzlement involves the fraudulent appropriation to his own use or benefit, of property or money entrusted to [an individual] by another, by a clerk, agent, trustee, public officer, or other person acting in a fiduciary character.")(internal quotations omitted and alteration in the original). There is no evidence in the record that Albert's position as a home healthcare aide was in a fiduciary capacity.  The United States concedes that the statutes which she violated do not include an abuse of a position of trust as an element.  <u>See</u> 18 U.S.C. §§ 1029(a)(2) and 1029(2).

### B.   ALBERT DID NOT OCCUPY A POSITION OF TRUST VIS-A-VIS HER VICTIMS BECAUSE SHE LACKED SUBSTANTIAL DISCRETIONARY AUTHORITY OVER HER JOB DUTIES AS A HOME-HEALTH CARE AIDE.

"[T]he lack of any authority to make substantial discretionary judgments is key in determining whether the enhancement applies." <u>United States v. Spear</u>, 491 F.3d at 1154 (internal quotations omitted).   Imposition of an enhancement under U.S.S.G. §3B1.1 "is reserved for those with professional or managerial discretion." <u>United States v. Spear</u>, 491 F.3d at 1154.  Thus the Court

> must undertake a functional analysis of job responsibilities and examine whether those duties were merely ministerial or were, in fact, managerial.  Indications of substantial discretionary judgment under the § 31B1.3 enhancement include the authority to engage in case-by-case decisionmaking, to set policies, and to grant exceptions to governing policies or protocols.   These factors are a [sic] nonexhaustive, and no one factor is dispositive of the analysis.

<u>United States v. Spear</u>, 491 F.3d at 1155.

-15-

The Court does not believe that Albert exercised discretionary judgment in her capacity as a home-health care provider to her victims.  Albert did not have any financial responsibility for or to her clients.  See Revised PSR ¶ 8, at 4 (explaining that "Albert never had authorization to write or sign checks for Mrs. Pyle, and she was not an authorized account user for any credit card accounts in Mrs. Pyle's name.").  Although Albert was given petty cash each month to purchase food and supplies, she was asked to provide receipts for all her purchases.  See id.  Albert was not authorized to open Pyle's mail, although she was instructed to pick the mail up.  See id.  Her function was ministerial, not managerial.

The United States argues that the United States v. Spear case is inapplicable to Albert.  See Transcript at 14:1-4 (McCulloch). The United States contends that Albert's case falls under United States v. Evans and United States v. Pappert.  In United States v. Evans, the defendants "exercised considerable control and maintained considerable independence, despite some regulatory oversight." 44 Fed.Appx. at 453.  Because the defendants were to reimburse the providers for funds expended the previous month, the defendants were  "in a personal trust relationship with the providers, and the defendants' demands for kickbacks abused that trust and deprived the providers of reimbursement funds."  Id.   Likewise, in United States v. Pappert, the Tenth Circuit cautioned sentencing courts to "carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity, and relationships in which the victim's trust is based on [the] defendant's position in the transaction." United States v. Pappert, 112 F.3d at 1080.  The Tenth Circuit in United States v. Pappert found that the defendant had a position of trust with his customers, because "by virtue of his role as middleman between customer and financing source, [the defendant] gained a position of trust with respect to the customers that enabled him to conceal his fraud for long periods of time."  Id. at 1080. Unlike the

defendants in <u>United States v. Evans</u> and <u>United States v. Pappert</u>, Albert was not entrusted with her victims' identifying information or their finances.  The United States has not proven that Albert was in a trust relationship with her clients, because her function as a home-health care aide did not give her discretionary power over her victims' finances.

The Tenth Circuit has explained that "position of trust is a bit of a misnomer.  It actually has little to do with <u>trustworthiness</u> and everything to do with <u>authority</u> and <u>discretion</u>."  <u>Id.</u> at 1154 (internal quotations omitted)(emphasis in the original).  Unlike the home-health care aide in <u>United States v. Morris</u>, Albert's duties were circumscribed.  <u>Compare</u> 350 F.3d at 38 (describing the defendant home-health care provider's duties as "relatively unsupervised discretion over [the clients'] daily care") <u>with</u> Revised PSR ¶ 8, at 4 (explaining that Albert was hired by Pyle to be Pyle's live-in, home-health care aide, including "cleaning the home, preparing meals for herself and Ms. Dougan [Pyle's sister], shopping, and watering the roses in the front of the house.").  Albert's position as a home-health care aide was that of a health aide unlike the defendant in <u>United States v. Thomas</u>, 315 F.3d 190 (3d Cir. 2002).  Unless the Court is prepared to say that all home-health care workers are in a position of trust, Albert's case appears to be beyond the scope of U.S.S.G. § 3B1.1 because her discretion was strictly circumscribed.

Albert had no authority to pay the bills for her clients and thus there was no "clear[] invest[ment] [in the defendant of] considerable discretion."  <u>Id.</u> at 194.  There was no "substantial reliance on the good faith of [the defendant], as there would be in any relationship where financial matters are entrusted to another."  <u>Id.</u>  at 204-205. Although Albert's victims may have entrusted themselves to her care, they gave her very little authority and discretion over their personal information and finances, and thus, Albert was not in a position of trust within the meaning of U.S.S.G. §3B1.1.

### C.   ALBERT'S POSITION AS A HOME-HEALTH CARE AIDE DID NOT FACILITATE HER OFFENSE OR IMPEDE ITS DETECTION.

The United States argues that the Guideline does not require a nexus between Albert's job and her stealing identification information from her clients.  See id. at 12:18-22 (Court & McCulloch). The Tenth Circuit, however, has explained that the United States must establish that "the [defendant's] position of trust was used to facilitate significantly the commission or concealment of the crime." United States v. Spear, 491 F.3d at 1153.  "For this enhancement to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)." U.S.S.G. § 3B1.1 app. n.1.

In United States v. Spear, enhancement under § 3B1.3 was unauthorized for a federal-immigration employee responsible for intake of applications for changes in status.  The employee embezzled the fees by depositing application fees into her personal account.  The Tenth Circuit held that because "her theft was accomplished by being in the right place at the right time, i.e., opportunity and access, not by exercising the cloak of authority to stave off inquiry or decision-making power to cover her tracks."  491 F.3d at 1156-59.  Likewise, in United States v. Edwards, the enhancement was unauthorized because the defendant's work was ministerial and clerical, and the Tenth Circuit rejected the United States' argument that the defendant had "alleged specialized accounting skills,  . . . minimal oversight, [and] . . . virtually exclusive control over the accounts receivable and customer billing records," and that she "use[d] . . . her position to conceal [her offense]." United States v. Edwards, 325 F.3d at 1187.

The United States has not proven that Albert's position, even assuming it was a position of trust, "contributed in some significant way to facilitating the commission or concealment of the

offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)."  U.S.S.G. §3B1.1 app. n.1.  Albert's crimes were not accomplished by her "exercising [a] cloak of authority to stave off inquiry or [using] decision-making power to cover her tracks."  United States v. Spear, 491 F.3d at 1156-59.  There is insufficient evidence that Albert "gained a position of trust with respect to [her clients] that enabled [her] to conceal [her] fraud for long periods of time."  United States v. Pappert, 112 F.3d at 1080.

## II.   THE COURT WILL NOT ORDER ALBERT TO PAY $126.63 TO MARQUEZ FOR HIS LOSSES INCURRED IN RESTORING HIS CREDIT, BECAUSE THOSE LOSSES ARE NOT ACTUAL DAMAGES, AND THUS ARE NOT ELIGIBLE FOR RESTITUTION.

In its Second Addendum, the USPO noted that Marquez was asking for additional restitution in the amount of  $126.63 for money he used to restore and correct his credit, an amount $53.90 more than the amount originally identified in the PSR.  See id. at 1.  The USPO explained that "[a]lthough Mr. Marquez' situation is tragic and heartfelt, it does not appear the losses incurred restoring his credit can be ordered for restitution purposes."  Id.  The United States bears the burden of proving the amount of loss.  See United States v. Galloway, 509 F.3d at 1253.   "[T]he district court resolves disputes over the proper amount of restitution by the preponderance of the evidence." Id.  "[A] restitution order must be based on the actual amount of loss . . . sustained by a victim as a result of the offense."  United States v. Messner, 107 F.3d 1448, 1455 (10th Cir. 1997)(internal quotations omitted).

The USPO explained that Marquez' claim for an additional $126.63 is for money that he has used to restore and correct his credit.  See Second Addendum at 1.  The USPO advised that Marquez' damages are for consequential damages, not actual damages.  See id.  The USPO provided the example of a mail theft victim:

A specific example would be a case where the defendant is convicted of Theft of Mail.  The victim is entitled to receive what was taken, i.e. a check or money that was in the mail, but the victim would not be entitled to restitution on the expense made to reissue the check, close or reopen the checking account, time spent doing this, etc.  These actions would be termed more as consequential damages not subject to restitution. . . . [I]t does not appear restitution is available for Mr. Marquez' consequential (as opposed to direct) losses such as expenses incurred for credit repair.

Second Addendum at 2.

In United States v. Patty, 992 F.2d 1045 (10th Cir. 1993), the Tenth Circuit explained that "[e]xpenses generated in recovering a victim's losses . . . generally are too far removed from the underlying criminal conduct to form the basis of a restitution order." Id. at 1049 (internal quotations omitted).  In United States v. Patty, the Tenth Circuit held that "attorney fees incurred by the victim to recover . . . property are not directly related to the defendant's criminal conduct and thus are not recoverable in restitution." where the defendant was charged with fraud.  Id.   The Tenth Circuit explained, however, that attorney fees may be recoverable if they are "directly related to a defendant's criminal conduct because they were 'sustained by [the] victim as a result of the offense.'"  Id. (quoting 18 U.S.C. § 3664)(alteration in the original).

Marquez' losses for miscellaneous postage and copies of paperwork to various creditors, see Second Addendum at 1, are similar to the attorney's fees sought in  United States v. Patty.  They were incurred by Marquez in his attempts to recover his property.  Thus, Marquez' claim for $126.63 in restitution are for consequential, not direct, damages, and are ineligible for restitution.  See  United States v. Messner, 107 F.3d at  1455 ("[A] restitution order must be based on the actual amount of loss . . . sustained by a victim as a result of the offense.").

**IT IS ORDERED** that the United States' oral objections to the Presentence Investigation Report made at the November 8, 2007 hearing are overruled.

-20-

UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
   Acting United States Attorney
Mary Catherine McCulloch
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Margaret A. Katze
   Assistant Federal Public Defender
Albuquerque, New Mexico

   *Attorneys for the Defendant*