# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 06-2384 JB

PATRICIA ALBERT,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, Objections to Presentence Report, and Motion for Downward Departure, filed August 29, 2007 (Doc. 26)("Motion"). The Court held a sentencing hearing on November 8, 2007 and April 10, 2008. The primary issues are: (i) whether the Court should sustain the objection to the role adjustment under U.S.S.G. § 3B1.3, because Defendant Patricia Albert abused a position of public or private trust; (ii) whether the Court should sustain the objection to the role adjustment under U.S.S.G. § 3A1.1, because Albert's victims were vulnerable; (iii) whether the Court should grant a downward departure, under U.S.S.G. § 5H1.6, because of Albert's family ties and responsibilities; (iv) whether the Court should grant a downward departure because of Albert's post-offense rehabilitation; and (v) whether the Court should grant a downward departure, under U.S.S.G. §§ 5H1.3 and 5K2.0, because of Albert's mental and emotional condition. Because the United States Probation Office ("USPO") has, in its Addendum and re-disclosed Presentence Investigation Report, withdrawn the U.S.S.G. § 3B1.3 enhancement, and no party has objected to the re-disclosed Presentence Investigation Report, the Court will overrule the objection to the role adjustment under

U.S.S.G. § 3B1.3 as moot.  The Court will overrule Albert's objection to the 2-level enhancement under U.S.S.G. § 3A1.1.  The Court will also deny the motions for a downward departures and for a variance from the Guideline sentence.

## FACTUAL BACKGROUND

Albert worked as a healthcare assistant for Linda K. Pyle and Wilfred Marquez.  See Presentence Investigative Report ("PSR") ¶¶ 7, 8, 15, 16 at 4, 7, re-disclosed September 17, 2007. When Albert worked for Pyle, she was "asked to obtain the mail but instructed not to open it."  Id. ¶ 8, at 4.  "Albert never had authorization to write or sign checks for Mrs. Pyle, and she was not an authorized account user for any credit card . . . accounts in Mrs. Pyle's name."  Id.

Albert was hired to be Pyle's live-in home healthcare aide, whose duties included "cleaning the home, preparing meals for [Pyle] and Ms. Dougan [Pyle's sister], shopping, and watering the roses in the front of the house."  Id. ¶ 8, at 4.  "Albert was given $200 petty cash each month for purchasing food and supplies, having been asked to provide receipts for purchases."  Id.  Albert used Pyle's personal data to fraudulently apply for and receive a Bank of America credit card.  See id. ¶ 6, at 4.

Albert used that credit card to obtain cash or merchandise valued at over $1,000.00.  See id. Albert ultimately obtained $16,863.74 worth of merchandise and goods using Pyle's identity.  See id. ¶ 10, at 5.  Albert used Pyle's social-security number and date of birth to obtain other credit cards.  See id. ¶ 12, at 6.  Albert also used Pyle's 2003 Notice of Property Value in Bernalillo County and her Medicare card.  See id.

Albert also fraudulently obtained several credit accounts using Marquez' name and social security number to obtain $5,876.20 worth of merchandise and goods.  See id. ¶ 17, at 7.  Albert provided home healthcare to Marquez through Sunset Home Health.  See id. ¶ 16, at 7.  On April

17, 2007, Albert admitted using Pyle's and Marquez' information to obtain credit cards in her name without permission. See id. ¶ 30, at 11.

**PROCEDURAL BACKGROUND**

Albert was indicted for two counts of violating 18 U.S.C. §§ 1029(a)(2) and 2. See Indictment, filed November 15, 2007 (Doc. 1). On June 11, 2007, the USPO disclosed a PSR regarding Albert. See PSR, disclosed June 11, 2007. The USPO assessed a 2-level adjustment to Albert's offense level pursuant to U.S.S.G. § 3B1.3 for abuse of private or public trust. See id. ¶ 35, at 12.

On August 29, 2007, Albert submitted objections to the PSR, and moved for departures and a variance. See Motion at 1. Albert objects to the suggested enhancement in paragraph 35 of the PSR for vulnerable victims. See id. She also moves the Court for a downward departure under U.S.S.G. § 5H1.6, for family ties and responsibilities, under U.S.S.G. § 5H1.3, for mental and emotional condition, and for post-offense rehabilitation. See Motion at 3-10. She further requests a variance from the advisory Guideline. See id. at 10-13. Albert argues that a variance is appropriate based on the factors in 18 U.S.C. § 3553(a). See Motion at 10-13. Albert incorporates her arguments for departures as part of her argument for a variance. See id. at 11.

On September 11, 2007, the United States submitted an informal objection to the USPO's recommendation that a 2-level increase be assessed to Albert, pursuant to U.S.S.G. § 3A1.1, regarding "vulnerable victims." Addendum at 1, disclosed September 17, 2007 ("Addendum"). The USPO determined that a 2-level increase to Albert's base offense level was applicable because one of her victims was blind and bedridden while the other was partially paralyzed. See id. at 1. The USPO stated: "In this case, the defendant was employed as an in home care giver for the elderly and disabled. She was in a position to take care of people who were unable to care for themselves,

which gave her latitude to move about their homes and obtain personal information." Id.  The

USPO noted that the PSR would be re-disclosed, with the 2-level adjustment to Albert's offense

level assessed.  See id.  The USPO also noted that Albert had informal objections that were

incorporated into her Sentencing Memorandum regarding the adjustment to her offense level under

U.S.S.G. § 3B1.3.  See Addendum at 1.

On September 17, 2007, the USPO re-disclosed Albert's PSR.  See PSR, re-disclosed on

September 11, 2007.  In the PSR, the USPO assessed a 2-level role adjustment pursuant to U.S.S.G.

§ 3A1.1(b)(1) for "vulnerable victim."  PSR ¶ 35, at 12-13.  The USPO explained:

> Pursuant to U.S.S.G. 3A1.1(b)(1), if the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels.  Pursuant to the Application Note 2, the term "vulnerable victim" means a person who is the victim of any offense of conviction under relevant conduct and unusually vulnerable due to age, physical or mental condition, or particularly susceptible to the criminal conduct. The adjustment is applicable in cases where the victims were unable to detect or prevent the crime.  Additionally, pursuant to Application Note 4, if an enhancement from subsection (b) applies and the defendant's past criminal conduct includes prior sentences for offenses involving vulnerable victims, an upward departure may be warranted.

> In this case, [Albert] was employed as an in home care giver for the elderly and disabled.  She was in a position to take care of people who were unable to care for themselves, which gave her latitude to move about their homes and obtain personal information.  She did not have permission or managerial control over any financial matter, but she did used [sic] her place of employment as a starting point to obtain personal data of each victim.  In the instant offense, one of the victims was blind and bed-ridden due to Multiple Sclerosis, while the other one was disabled due to partial paralysis.  [Albert] lived with each victim at some point and was trusted as a private home, health care, provider for people in the most vulnerable position compared to other citizens.  Had [Albert] not been employed in such a position, she would not have been able to obtain and access personal information she used to assume the victim's identities.  [Albert]'s conduct had great consequences for these victims and their families for years after she committed the instant offense.

> Additionally, [Albert] has several prior convictions for offenses involving the same type of victims as those in the instant offense, and her access to those victims['] personal dat[a] was opportunistic based on her employment as an in-home care giver. The criminal conduct is similar in nature and also involved vulnerable victim's

-4-

> personal information being stolen or used fraudulently by the defendant. Based on the aforementioned, a two level increase is applicable. Moreover, an upward departure may be warranted if the Court's review of her past criminal conduct involved the selection of the victims due to their vulnerability.

PSR ¶ 35, at 12-13 (emphasis in original). Paragraph 58 of the PSR notes that Albert stated she applied for Social-Security disability in late 2005 or early 2006. See PSR ¶ 58, at 25. Albert's

> application was due to a lifelong learning disability, manic depression, bi-polar disorder, and post-traumatic stress. [Albert] did not have any prior treatment to report and no verifiable records or contacts. [Albert] has been engaged in counseling while under pretrial release with Evolutions. Records from her supervision file indicate that [Albert] has neither asked for nor received any treatment to address the aforementioned problems. The information was not presented to the Court previously and no verification or record data to assess has been obtained.

PSR ¶ 58, at 25. Albert has an infant son. See PSR ¶ 56, at 24. Paragraph 90 of the PSR states that Albert's "sister reported she is able to care for [Albert]'s son, but it would be difficult as [the sister] has three children of her own and is a single mother. [Albert]'s sister noted she would ask for custody of the child rather than have him go to the custody of the State." Id. ¶ 90, at 31.

The United States responded to Albert's sentencing memorandum on September 20, 2007. See The United States Response to Defendant's Sentencing Memorandum and Motion for Downward Departure at 1, filed September 20, 2007 (Doc. 30)("Response"). The United States contends that Albert's family circumstances are not unique and do not fall outside of the heartland. See id. at 1. The United States asserts that Albert had "ample notice of the criminal proceedings against her prior to becoming pregnant." Id. at 2. The United States argues that "Albert is in no different position than any other single parent facing a term of imprisonment." Id. at 3.

The United States also asserts that Albert's post-offense rehabilitation has not been exceptional. See id. The United States contends the 18 months of sobriety that "Albert claims is the expected length of her pregnancy and the current age of her child." Id. at 3. The United States

contends that "[o]ther than a period of sobriety after a long history of drug use Ms. Albert points to no other rehabilitative efforts." Id. The United States argues that Albert's mental and emotional condition do not warrant a downward departure. Id. at 4. The United States contends that, because "Albert failed to create a record upon which this Court could justify a downward departure based on her claim of physical and sexual abuse during her childhood," a departure based on Albert's mental and emotional condition would be an abuse of discretion. Id. at 5. The United States argues that a role adjustment for vulnerable victim, under U.S.S.G. § 3B1.1, is warranted. See id. at 8-9. The United States also argues that an adjustment for abuse of position of trust is "mandatory." Id. at 8.

On November 6, 2007, the USPO wrote a second addendum to Albert's re-disclosed PSR. See Second Addendum to the Presentence Report, dated November 6, 2007 ("Second Addendum"). In the Second Addendum, the USPO noted that Marquez was asking for $126.63 in restitution for money he used to restore and correct his credit, an amount $53.90 more than the amount originally identified in the PSR. See id. at 1. The USPO explained that, "[a]lthough Mr. Marquez' situation is tragic and heartfelt, it does not appear the losses incurred restoring his credit can be ordered for restitution purposes." Id. The USPO stated "[t]his is based on an assessment of the applicable restitution statutes and the harm Mr. Marquez incurred being equitable to a collateral consequence or damage." Id.

At the April 10, 2008 hearing, Albert contended that she did not believe that there should be an enhancement for vulnerable victim. See Transcript of Hearing("Tr.") at 3:1-5 (Katze).[1] Albert argued that she did not target her victims because of their unusual vulnerability. See id. at 4:8-9

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

(taken April 10, 2008)(Katze).  Albert noted that she did not have any law that would support a requirement under U.S.S.G. § 3A1.1 requiring her to target her victims because they were vulnerable.  See Tr. at 5:15-18 (Court & Katze).   Albert maintained that her offense was a crime of opportunity.  See id. at 7:21 (Katze).

Albert noted that her son is beginning to wean himself.  See id. at 13:8-10 (Court & Albert).  Albert's counsel, Ms. Margaret Katze, represented that, were Albert to be incarcerated, members of her church would take care of her son.  See id. at 13:14-19 (Katze).  Ms. Katze stated that she did not "know of a specific person in that church [who would care for Albert's son] but it . . . [was her] understanding that . . . within the church community that they would see that he be cared for."  Id. at 13:19-21 (Katze).  Ms. Katze stated that she was not sure "what [an] individual would have to do post[-]offense to be considered exceptional, . . . [because] in [her] experience . . . [a] number of individuals . . . to begin with don't even comply with the conditions of pretrial release."  Id. at 19:11-14 (Katze).  Albert noted that, in the PSR, the USPO reported that her sister would care for Albert's son, but represented that this possibility was no longer the case, because the relationship between Albert and her sister is no longer intact.  See id. at 9:14-16 (Katze).  Albert argued that she has complied with conditions of release, and that she had a severe drug problem and now has been completely clean, which is exceptional.  See id. at 19:11-18 (Katze).  Albert asked that, if the Court were not inclined to grant the departures she was requesting, that the Court grant her a split sentence, so that she could serve part of her time incarcerated and part of her time on electronic monitoring. See id. at 14:8-12 (Katze).

The United States responded that it did not believe that the issue of vulnerable victim was raised in the briefing, and that it believes an enhancement is appropriate.  See id. at 3:10-15 (Court & McCulloch).   The United States stated that it did not believe that the enhancement had an intent

requirement in it.  See id. at 6:15-17 (McCulloch).  The United States also contended that the examples under U.S.S.G. § 3A1.1 where the enhancement was unauthorized were where the victims were randomly chosen.  See id. at 6:15-19 (McCulloch).  The United States argued that Albert did not randomly choose victims who were vulnerable, because she advertised her services as a healthcare aide for the disabled.  See id. at 6:18-20 (McCulloch).  The United States contended that Albert was aware of potential criminal proceedings against her in December of 2005 and became pregnant thereafter knowing that she may be facing criminal liability.  See id. at 15:1-5 (McCulloch).  The United States opposed Albert's request for a split sentence and requested that a period of imprisonment within the advisory Guidelines' range be imposed.  See id. at 21:1-3 (McCulloch).

## LAW REGARDING U.S.S.G. § 3A1.1

U.S.S.G. § 3A1.1 provides:

Vulnerable Victim

* * * *

(b)(1) If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels.

(2) If (A) subdivision (1) applies; and (B) the offense involved a large number of vulnerable victims, increase the offense level determined under subdivision (1) by 2 additional levels.

U.S.S.G. § 3A1.1.  Application Note 2 to U.S.S.G. § 3A1.1 explains:

For purposes of subsection (b), "vulnerable victim" means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under 1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.

Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. The

adjustment would apply, for example, in a fraud case in which the defendant marketed an ineffective cancer cure or in a robbery in which the defendant selected a handicapped victim. But it would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.

U.S.S.G. § 3A1.1 app. n.2.  "In order to classify a victim as vulnerable, the sentencing court must make particularized findings of vulnerability." United States v. Williams, 21 Fed.Appx. 824, 826 (10th Cir. 2001)(internal quotations omitted).  "Additionally, [t]he focus of the inquiry must be on the victim's personal or individual vulnerability." Id. (internal quotations omitted).

"[V]ulnerable victims are those who are in need of greater societal protection." United States v. Brunson, 54 F.3d 673, 676 (10th Cir. 1995).  "[T]he vulnerable victim enhancement does not require a finding [that] the defendant targeted the victim because of his vulnerability." United States v. Checora, 175 F.3d 782, 789 n. 4 (10th Cir. 1999).  See United States v. Smith, 133 F.3d 737, 749 (10th Cir. 1997)(same); United States v. Hardesty, 105 F.3d 558, 560-61 (10th Cir.1997)(same).  "Moreover, the vulnerable victim enhancement cannot be based solely on the victim's membership in a certain class; the sentencing court is required to make particularized findings of vulnerability, focusing on the individual victim and not the class of persons to which the victim belonged." Id.

In United States v. Janusz, 135 F.3d 1319 (10th Cir. 1998), the United States Court of Appeals for the Tenth Circuit held that an enhancement under U.S.S.G. § 3A1.1 was appropriate. See 135 F.3d at 1325.  The enhancement was appropriate because the sentencing court "made specific findings as to the vulnerability of both [of the victims]. [One victim] was bedridden, unable to tend for himself, sick and extremely vulnerable." Id. (internal quotations omitted).  The other victim "was confused about many things, very susceptible to suggestion from anyone, including the

defendant [and] . . . . was extremely trusting in many respects." Id.  The enhancement was also

appropriate because the sentencing court "found a nexus between [the victims]' vulnerability and

the commission of the crimes." Id. The Tenth Circuit commented:

> It would be difficult, indeed, to imagine a stronger nexus.  The evidence indicate[d
> that the defendant] recognized [the victims]' age, wealth, and diminished physical
> capacity, and believing they would both soon die . . . devised a scheme to separate
> them from their money by making loans which he would collect for himself after
> their death.

Id. (internal citations omitted).

## LAW REGARDING DOWNWARD DEPARTURES

While the Guideline sentence is now advisory, the sentencing court's first task remains to

accurately determine the Guideline sentence.  Only after the court calculates the correct Guideline

sentence can the court make an informed decision whether a variance is appropriate.  Accordingly,

the court must still carefully consider possible departures under the Guidelines before it can

meaningfully decide a variance request.

### 1.    Family Ties and Responsibilities, U.S.S.G. § 5H1.6.

"Under U.S.S.G. § 5H1.6, . . . '[f]amily ties and responsibilities . . . are not ordinarily

relevant in determining whether a sentence should be outside the applicable guideline range.'

Family ties and responsibilities are specific offender characteristics, ordinarily a discouraged basis

for departure." United States v. Jones, 158 F.3d at 499 (quoting U.S.S.G. § 5H1.6 ). Although

U.S.S.G. § 5K2.0 allows for departure based on this factor, it is only appropriate in atypical cases.

See id. "When used as the sole basis for departure, family circumstances must be 'extraordinary.'"

Id. (quoting United States v. Rodriguez-Velarde, 127 F.3d 966, 968-69 (10th Cir.1997)). "To

warrant departure on this basis, 'a defendant must demonstrate that the period of incarceration set

by the Guidelines would have an effect on the family or family members beyond the disruption to

family and parental relationships that would be present in the usual case.'" Id. (quoting United States v. Rodriguez-Velarde, 127 F.3d at 968)(quotation omitted)).  See United States  v. Gallegos, 129 F.3d 1140,  1146 (10th Cir. 1997)(holding that the defendant's circumstances were not out of the heartland where the defendant was the sole support for her son and partial support for her parents).

> 2.      **Mental and Emotional Condition, U.S.S.G. § 5H1.3.**

Pursuant to U.S.S.G. § 5H1.3, "mental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted, except, as provided in [U.S.S.G. § 5K2.0] (Other Grounds for Departure)." According to U.S.S.G. § 5K2.0(a)(4), "an offender characteristic . . . identified in Chapter Five, Part H (Offender Characteristics) . . . as not ordinarily relevant in determining whether a departure is warranted may be relevant to the determination only if such offender characteristic . . . is present to an exceptional degree."

The Guidelines do not specifically address the issue of childhood abuse.  See United States v. Roe, 976 F.2d 1216, 1217 (9th Cir. 1992)(noting that "[t]he guidelines do not specifically address the issue of childhood abuse.  However, they do provide that '[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines.'")(quoting U.S.S.G. § 5H1.3).  In United States v. Rivera, 192 F.3d 81 (2d Cir. 1999), the United States Court of Appeals for the Second Circuit declined to allow departure on the basis of extreme childhood abuse.  The defendant contended that a departure was warranted on the basis of his birth as the result "of a familial rape, because he spent time in foster homes, and because his stepfather was killed when [the defendant] was eight," and "having been beaten a lot, having his hands burned, being made to kneel on rice in the corner, and being struck with extension cords." Id. at 84.  The Second Circuit explained:

> These episodes of corporal punishment could conceivably rise to a showing of abuse.

> But [the defendant] has failed to allege and show, as required for a § 5H1.3 departure, that any abuse he may have suffered rose to the extraordinary level that can be assumed to cause mental or emotional pathology.

Id.  See United States v. Clark, 8 F.3d 839, 845-46 (D.C. Cir. 1993)(remanding to the sentencing court to consider "whether [the defendant']s childhood exposure to domestic violence is sufficiently extraordinary to be weighed under U.S.S.G. § 5H1.3, which states that mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable Guidelines range."  In United States v. Roe, the United States Court of Appeals for the Ninth Circuit agreed that

> "[a] defendant's family history of incest or related treatment which causes defendant to incur a mental or emotional condition that affects criminal conduct, may be a ground for departure in extraordinary circumstances.  It is clear that the Sentencing Commission, while leaving open the possibility that the circumstances of a defendant's mental or emotional condition may be so extraordinary that departure from the guidelines is proper, did not consider these factors relevant in formulating the guidelines."

976 F.2d at 1218 (quoting United States v. Vela, 927 F.2d 197, 199 (5th Cir. 1991)).

In United States v. Browning, 252 F.3d 1153 (10th Cir. 2001), the Tenth Circuit was confronted with the issue whether the sentencing court erred in declining to grant a downward departure based upon childhood abuse.  See 252 F.3d at 1160.  The Tenth Circuit first explained that, as a general matter, U.S.S.G § 5H1.12 prohibits departures for lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing.  See id.  The Tenth Circuit noted that other circuits have distinguished "exceptionally cruel," and "psychological and emotional abuse," from generalized lack of guidance or neglect discouraged as a basis for departure under U.S.S.G. § 5H1.12.  See 252 F.3d at 1160.  The Tenth Circuit found, however, that it did not have jurisdiction to review the sentencing court's refusal to grant a downward departure, because the sentencing court did not state that it did not have the authority to depart.  See id. (stating that, "[d]espite the analytical

-12-

soundness of [United States v. ]Ayers, [971 F.Supp. 1197 (N.D.Ill. 1997)], [United States v. ]Rivera, [192 F.3d 81, 84-85 (2d Cir. 1999)], and other similar cases, we do not have jurisdiction to apply them to [the defendant]'s claim.  Our review of a sentencing court's refusal to grant a downward departure is narrow.").

In United States v. Ayers, the sentencing court found that departure was warranted under U.S.S.G. § 5H1.12.  See 971 F.Supp. at 1201.  The sentencing court explained:

> In this case, the court finds that the childhood abuse [the defendant] suffered was exceptionally cruel.  In and of itself, the physical and sexual abuse that [the defendant] endured was extreme but not extraordinary: Many defendants that have appeared before this court over the years were beaten and sexually abused as children.  What makes [the defendant's] case exceptional in the eyes of the court is the psychological and emotional abuse that [the defendant's] father relentlessly inflicted on [the defendant] over a period of years.  This psychological and emotional abuse was a form of sadistic torture.

Id. at 1200 (footnote omitted).  See United States v. Rivera, 192 F.3d at 84-85 (collecting circuits' cases that have departed on the basis of extreme childhood abuse, including the United States Courts of Appeals for the Fourth, Seventh, Ninth, and District of Columbia).

### 3.   Post-Offense Rehabilitation.

Post-offense rehabilitation is a recognized basis for downward departure. See United States v. Jones, 158 F.3d 492, 500 (10th Cir. 1998)(stating that "the Supreme Court's holding in Koon[ v. United States, 518 U.S. 81 (1996),] makes it clear [that] the district court has the authority to consider post-offense rehabilitation as a basis for downward departure."); United States v. Whitaker, 152 F.3d 1238, 1240 (10th Cir. 1998)(stating that "post-offense rehabilitation can only be an appropriate ground for downward departure if the efforts are of a magnitude that the defendant's situation cannot be considered typical of those where an acceptance of responsibility adjustment is granted.").  Post-offense rehabilitative efforts may constitute a sufficient factor warranting a

downward departure. See United States. v. Brock, 108 F.3d 31 (4th Cir. 1997)(stating that post-offense rehabilitation efforts "potentially may serve as a basis for departure.").  Under Koon v. United States, the Supreme Court ruled that, in assessing whether the Sentencing Commission adequately considered a potential basis for departure in formulating the Guidelines, a court should look at whether the Guidelines, policy statements or commentary has addressed the particular factor. See 518 U.S. at 94.  Only those factors upon which the Sentencing Commission has forbidden reliance upon may never provide an appropriate basis for a departure. See id.  The Supreme Court stated:  "The Commission intended the sentencing courts to treat each guideline as carving out a heartland, a set of typical cases embodying the conduct that each guideline describes." Id. at 92 (internal quotations omitted). "Atypical cases were not adequately taken into consideration, and factors that may make a case atypical provide potential bases for departure." Id. at 94.

The Sentencing Commission has not expressly forbidden consideration of post-offense rehabilitation efforts; thus, they may potentially serve as a basis for departure. United States v. Brock, 108 F.3d at 35.  The Tenth Circuit further stated, however,  that "post-offense rehabilitation may provide an appropriate ground for departure only when present to such an exceptional degree that the situation cannot be considered typical of those circumstances in which an acceptance of responsibility adjustment is granted."  As the United States Court of Appeals for the Third Circuit noted in United States v. Sally, 116 F.3d 76 (3d Cir. 1997), "post-offense rehabilitation efforts, including those which occur post-conviction, may constitute a sufficient factor warranting a downward departure provided that the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply." Id. at 80.

-14-

**LAW REGARDING SENTENCING AFTER** UNITED STATES V. BOOKER

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D). See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth

Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to thoughtful consideration.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006).  This presumption, however, is an appellate presumption, not one that the trial court can or should apply.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).  Instead, the trial court must undertake the § 3553(a)  balancing of factors without any presumption in favor of the advisory Guideline sentence.  See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).

## ANALYSIS

Albert's objection to paragraph 35 of the PSR in Defendant's Sentencing Memorandum, Objections to Presentence Report, and Motion for Downward Departure is moot.  Albert's oral

objection to the two-level enhancement based on vulnerable victim pursuant to U.S.S.G. § 3A1.1 is overruled, because Albert did not need to select her victims based on their vulnerability for the enhancement to apply.  Albert's requests for downward departures on the basis of U.S.S.G. § 5H1.6, U.S.S.G. § 5H1.3, and post-offense rehabilitation are denied, because, under the facts and circumstances of this case, her case does not fall outside of the heartland of cases that the federal courts adjudicate.

I.    **A ROLE ADJUSTMENT IS NOT APPROPRIATE UNDER U.S.S.G.  § 3B1.1.**

The USPO has, in its Addendum and re-disclosed PSR, withdrawn the U.S.S.G. § 3B1.3 enhancement.  No party has objected to the re-disclosed PSR.  Accordingly, the Court will overrule the objection to the role adjustment under U.S.S.G. § 3B1.3, for abuse of trust, as moot. Cf. Memorandum Opinion and Order at 14-19, filed February 29, 2008 (Doc. 36).

II.   **THE COURT WILL OVERRULE ALBERT'S OBJECTION TO APPLICATION OF A 2-LEVEL ENHANCEMENT UNDER U.S.S.G. § 3A1.1.**

The Court believes that a 2-level enhancement under U.S.S.G. § 3A1.1 is authorized under the facts and circumstances of Albert's case, and was appropriately applied.  At the April 10, 2008 hearing, Albert contended that she did not believe that there should be an enhancement for vulnerable victim.  See Tr. at 3:1-5 (Katze).  The United States responded that it did not believe that the issue of vulnerable victim was raised in the briefing, and that it believes it is an appropriate enhancement.  See id. at 3:10-15 (Court & McCulloch).   Albert argued that, because she did not target her victims because of their unusual vulnerability, the enhancement was not appropriate.  See id. at 4:8-9 (Katze).  Albert conceded, however that she did not have any law to cite that would support such a requirement under U.S.S.G. § 3A1.1.  See Tr. at 5:15-18 (Court & Katze).

U.S.S.G. § 3A1.1 provides that a 2-level enhancement is authorized "[i]f the defendant knew

or should have known that a victim of the offense was a vulnerable victim."  U.S.S.G. § 3A1.1.

Application Note 2 to U.S.S.G. § 3A1.1 explains  that,

> for purposes of subsection (b), 'vulnerable victim' means a person (A) who is a
> victim of the offense of conviction and any conduct for which the defendant is
> accountable under 1.3 (Relevant Conduct); and (B) who is unusually vulnerable due
> to age, physical or mental condition, or who is otherwise particularly susceptible to
> the criminal conduct.

U.S.S.G. § 3A1.1 app. n.2. "[V]ulnerable victims are those who are in need of greater societal

protection."  United States v. Brunson, 54 F.3d at 676.

Application Note 2 to U.S.S.G. § 3A1.1 provides examples of appropriate application of the

Guideline:

> Subsection (b) applies to offenses involving an unusually vulnerable victim in which
> the defendant knows or should have known of the victim's unusual vulnerability. The
> adjustment would apply, for example, in a fraud case in which the defendant
> marketed an ineffective cancer cure or in a robbery in which the defendant selected
> a handicapped victim. But it would not apply in a case in which the defendant sold
> fraudulent securities by mail to the general public and one of the victims happened
> to be senile. Similarly, for example, a bank teller is not an unusually vulnerable
> victim solely by virtue of the teller's position in a bank.

U.S.S.G. § 3A1.1 app. n.2.  The Court reads the examples set forth in Application Note 4 as

illustrating that the Guideline is inapplicable to situations where the defendant did not know that the

victim was vulnerable.   Contrary to Albert's argument, however, "the vulnerable victim

enhancement does not require a finding that the defendant targeted the victim because of his

vulnerability." United States v. Checora, 175 F.3d at 789 n. 4.  See United States v. Smith, 133 F.3d

at 749 (same); United States v. Hardesty, 105 F.3d at 560-61 (same).

Albert was aware of her victims' vulnerabilities and problems.  As noted by the USPO, "one

of the victims was blind and bed-ridden due to Multiple Sclerosis, while the other one was disabled

due to partial paralysis."  PSR ¶ 35, at 12-1.  "In this case, [Albert] was employed as an in home

-18-

care giver for the elderly and disabled." Id.

The Court finds that the victims were vulnerable because of age and of physical condition. The Court also finds that Albert knew the victims were vulnerable at the time she committed her offenses. Thus, the 2-level enhancement was appropriately applied to Albert's offense level under U.S.S.G. § 3A1.1.

The USPO had an alternative ground for applying the enhancement to Albert's offense level under Application Note 4 of U.S.S.G. § 3A1.1. Paragraph 35 of the PSR also states:

> Additionally, the defendant has several prior convictions for offenses involving the same type of victims as those in the instant offense, and her access to those victims['] personal dat[a] was opportunistic based on her employment as an in-home care giver. . . . Moreover, an upward departure may be warranted if the Court's review of her past criminal conduct involved the selection of the victims due to their vulnerability.

PSR ¶ 35, at 12-13. The Court need not address the USPO's alternative justification for the 2-level enhancement, because the enhancement was appropriately applied under U.S.S.G. § 3A1.1 app. n. 2.

## II.   THE COURT WILL DENY ALBERT'S REQUESTS FOR DOWNWARD DEPARTURES UNDER U.S.S.G. §§ 5H1.3, 5K2, AND 5H1.6.

### A.   THE COURT WILL DENY ALBERT'S REQUEST FOR A DOWNWARD DEPARTURE FOR FAMILY TIES AND RESPONSIBILITIES.

The Court will deny Albert's request for a downward departure for family ties and responsibilities based on the importance of nursing her son. While the Court does not believe it should depart because of Albert's family ties and responsibilities, the Court will do some things to mitigate her family problems. The Court will set a date of voluntary surrender that will reasonably allow Albert to wean her son before she is incarcerated. The Court also notes that Albert's counsel has indicated that members of Albert's church will care for her son if Albert is incarcerated.

The Court believes that it is significant that Albert became pregnant after she became a target in this investigation and knew that she faced possible criminal liability.  In a sense, the timing of her pregnancy undercuts a finding that her family ties and circumstances are so extraordinary that they do not warrant incarceration, and also undercuts the justification for a downward departure.  That Albert is the sole caretaker or support of her son does not take her case out of the heartland.  See United States  v. Gallegos, 129 F.3d at 1146 (holding that fact that the defendant was sole support for her son and partial support for her parents did not take her circumstances out of the heartland).

This situation is very regrettable for the victims involved and for Albert and her son, but Albert's situation does not fall outside of the heartland of the federal cases that the Court sees. There is no strong difference between Albert and other single parents upon whom this Court, and other federal courts, have imposed imprisonment.  The Court believes that departure under U.S.S.G. § 5H1.6 for family ties and responsibilities is an authorized departure, but the Court chooses not to depart, because it does not believe that such a departure is warranted under the facts and circumstances presented by Albert's case.

### B.    THE COURT WILL NOT DEPART DOWNWARD BECAUSE OF ALBERT'S POST-OFFENSE REHABILITATION.

The Court notes that Albert appears to have complied with Probation's requirements, but her rehabilitation is not present to an exceptional degree.  While the Court applauds Albert's efforts and hopes that they continue, it does not believe that they are so exceptional that the Court can distinguish them from the efforts of other defendants who are on pre-trial release and continue to comply with probation.   The Court believes that departure on the basis of rehabilitation is authorized, but will exercise its discretion not to depart, because it does not believe that Albert's case falls outside of the heartland of cases that the federal courts see.

C.      THE COURT WILL NOT DEPART DOWNWARD BECAUSE OF ALBERT'S MENTAL AND EMOTIONAL CONDITIONS.

The Court has carefully reviewed Albert's mental and emotional condition, including the disability discussed by the USPO in paragraph 57 of the PSR and her relationship with her stepfather; however, it does not believe that these circumstances warrant departure.  Unfortunately, many of the defendants before the Court have bad relationships with their father or do not have a father present, or other issues of that magnitude.  These other defendants also frequently suffer from disabilities in learning, stress, and emotional conditions.  Although the Court believes that departure under U.S.S.G. § 5H1.3 is authorized, the Court does not believe that Albert's mental or emotional condition are so extraordinary as to warrant a departure.

D.      THE COMBINATION OF THESE FACTORS DO NOT WARRANT A DEPARTURE.

The Court also reviewed all three departure Guidelines together, and does not believe that any of them are present to an extraordinary degree -- either alone, in part, or in combination -- to warrant departure in Albert's case.  See United States v. Bowser, 941 F.2d 1019, 1025 (10th Cir. 1991)(holding that the sentencing court "did not err in considering three factors in combination to determine whether downward departure was appropriate.").  Albert's crime was very serious, and she should be incarcerated for the crime.  The facts and circumstances of Albert's situation do not fall outside of the heartland of cases that the federal courts adjudicate, and thus the Court will not apply the departures that Albert requests.

III.   THE COURT WILL NOT VARY FROM THE GUIDELINE SENTENCE.

The Court believes that Albert's son will be taken care of during her incarceration. The Court will set a date of voluntary surrender that will reasonably allow Albert to wean her son before she is incarcerated.  The Court does not believe that the history and characteristics of Albert support a

-21-

variance.

The Court will not vary from the Guideline sentence.  The Court is concerned that, if it varied from the Guideline sentence in Albert's case, the sentence would not promote respect for the law and would be a slap on the wrist in this situation.  A sentence of ten months provides just punishment.  A Guideline sentence provides specific deterrence and also provides general deterrence to protect the public.  Although this situation is very unfortunate for everyone involved, the Court believes that a Guideline sentence is reasonable without being greater than is necessary to comply with the purposes of punishment.

**IT IS ORDERED** that the objection  in Defendant's Sentencing Memorandum, Objections to Presentence Report, and Motion for Downward Departure to paragraph 35 of the Presentence Investigative Report, containing a 2-level enhancement based on vulnerable victim, pursuant to U.S.S.G. § 3A1.1 is overruled. Albert's requests for downward departures on the basis of U.S.S.G. § 5H1.6, U.S.S.G. § 5H1.3, and post-offense rehabilitation are denied.  Albert's request for a variance from the advisory Guideline sentence is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
   Acting United States Attorney
Mary Catherine McCulloch
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Margaret A. Katze
   Assistant Federal Public Defender
Albuquerque, New Mexico

   *Attorneys for the Defendant*